IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Eve Thornton and Eve Inc., ) | C/A No. 6:20-cv-01449-DCC |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Dave Alfred Johnson and Alda Inc., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on Defendants Johnson and Alda, Inc.'s Motion to Dismiss the Amended Complaint. ECF No. 16. Plaintiffs filed a Response in Opposition, and Defendants filed a Reply. ECF Nos. 17, 18.

## BACKGROUND

The following statement of facts is taken from the allegations of the Amended Complaint. *See* ECF No. 1 at ¶¶ 1–17. From 2002 through 2011, Plaintiff Eve Thornton ("Plaintiff Thornton") wholesaled shoes for a Florida-based company called Italian Shoemakers. Her job was to seek and secure orders and contracts with national retailers. Plaintiff Thornton was and is the sole owner of Plaintiff Eve, Inc., a South Carolina corporation with its principal office in Greenville County. Plaintiff Thornton was hired by Defendant Dave Alfred Johnson ("Defendant Johnson"), who was her boss and the sole owner of Defendant Aldo, Inc.

Four months after Plaintiff Thornton was hired, she received another job offer and attempted to give her two-week notice. However, Defendant Johnson told her that if she stayed, Italian Shoemakers would increase her monthly pay by $2,000. Plaintiff Thornton

1

already received a monthly check from Italian Shoemakers for $12,500 and was additionally supposed to receive discretionary commissions based on sales performance. She accepted the offer of additional pay and did not resign. The additional $2,000 per month, which shortly thereafter increased to $2,500 per month, was paid directly by Defendant Alda, Inc. In total, Plaintiff Thornton received two checks every month: one from Italian Shoemakers for $12,500, and one from Defendant Alda, Inc., for $2,500.

Plaintiff Thornton also received commissions between $5,000 and $26,500 each year from 2004 to 2011, for a total amount of $116,500 during that period. Commissions were paid from Italian Shoemakers to Defendant Johnson and/or Alda, from which Defendant Johnson and/or Alda was then supposed to pay Plaintiff Thornton. Plaintiff Thornton did not have access to sales reports to monitor her performance or commissions payable; only Italian Shoemakers and Defendants had access to that information. Plaintiff Thornton separated from her employment and/or agency relationship with Defendants Johnson and Alda, Inc., by 2012. She believed at that time she had been treated honestly with respect to her salaries and commissions and had no knowledge to the contrary.

In 2018, Plaintiff Thornton was tangentially involved in a lawsuit against Italian Shoemakers. In the course of her involvement she gained access for the first time to documentation showing that she had been due considerably more commission than she was actually paid. Specifically, from 2006 to 2011,[1] Plaintiff Thornton and/or Eve, Inc. was due approximately $631,392.64 in commissions and only received $116,500.

---

[1] Plaintiff Thornton did not gain access to information about her commissions for the years 2002–2005.

2

Plaintiff Thornton and/or Eve, Inc. was also[2] due approximately $319,757.01 in commissions from 2009 that had not been properly accounted for.

Plaintiffs filed suit in this Court on April 16, 2020, alleging seven causes of action against Defendants and seeking actual, incidental, consequential, treble, and punitive damages as well as attorney's fees. Defendants' Motion is now ripe for decision.

## **APPLICABLE LAW**

### *Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedures permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in the light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

---

[2] There is some ambiguity in the Amended Complaint about whether this $319,757.01 was included in the $631,392.64 or constituted an additional sum. Making all reasonable inferences in favor of Plaintiffs, the Court construes it as an additional sum for the purpose of this Motion and further notes that the exact amount has no bearing on the Motion's disposition.

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## DISCUSSION

### *Statutes of Limitations*

Defendants first assert that Plaintiffs' claims are subject to dismissal because they are outside the three-year statute of limitations.  For the following reasons, the Court disagrees.

Plaintiffs do not dispute that a three-year statute of limitations applies to all their claims.  ECF No. 17 at 7.  South Carolina uses the "discovery rule," under which "the statute of limitations begins to run from the date the injured party either knows or should known, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." *True v. Monteith*, 489 S.E.2d 615, 616 (S.C. 1997) (citations omitted).  This has been interpreted to mean "that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on *notice* that a claim against another party might exist." *Dean v. Ruscon Corp.*, 468 S.E.2d 645, 647 (S.C. 1996) (emphasis in original) (citation omitted).

The crux of Defendants' argument is that, because Plaintiffs knew or should have known the value of each sale at the time it was made, they could have calculated the commission earned on each sale and realized that Defendants' payments were deficient. *See* ECF No. 16-1 at 9–10. If true, this would signify that Plaintiffs "knew or should have known . . . that a cause of action exist[ed]." *Monteith*, 489 S.E.2d at 616.

While it may be difficult to imagine Plaintiffs were ignorant of the value of each of their sales, it is not alleged in the Amended Complaint that Plaintiffs knew how commissions were calculated. Plaintiffs' commissions were "discretionary . . . based on sales performance." ECF No. 12 at ¶ 8. Under the Rule 12(b)(6) standard this Court concludes that Plaintiffs lacked the necessary information to calculate commissions owed. *See E. Shore Mkts.*, 213 F.3d at 180. Defendants contend that because Plaintiffs allege a violation of S.C. Code Ann. § 35-53-20, which defines "commissions" as "compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the amount of order or sales or as a specified amount of each order or sale," Plaintiffs cannot claim ignorance of the amount of commission. ECF No. 16-1 at 10–11. But it does not follow from the statutory definition that Plaintiffs knew the percentage or specified amount of their commissions, nor is such knowledge alleged in the Amended Complaint.

Defendants' argument that Plaintiffs should have noticed the substantial difference in commission payments after they ended the relationship with Alda, Inc., but continued to sell shoes on behalf of Italian Shoemakers is similarly unavailing. It improperly assumes that Plaintiffs continued to receive commissions from Italian Shoemakers after 2011 in the same percentage or specified amount as before, when neither of these facts

is found in the Amended Complaint. In short, no facts alleged support any inference that Plaintiffs were or should have been aware of the deficiency in Defendants' commission payments at the time those payments were made. *Cf. Maher v. Tietex Corp.*, 500 S.E.2d 204, 208 (S.C. 1998) (plaintiff knew or should have known that he might have a cause of action when his testimony "reveal[ed] he believed at the time of these conversations [years prior] he was not getting the bonus money to which he felt entitled"); *Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 718 (Tex. 2002) (plaintiff, a field vice president, knew or should have known of his injury once a coworker "put him on notice that UBI might be underpaying the amount of commissions due to field vice presidents").[3]

Finally, Defendants note that "South Carolina courts have not yet ruled if the discovery rule applies to the Sales Representatives Act," S.C. Code Ann. § 39-65-10 *et seq*. ECF No. 16-1 at 15. Section 15-3-530(2) creates a three-year statute of limitations for "an action upon a liability created by statute other than a penalty or forfeiture." The Supreme Court of South Carolina has previously applied the discovery rule generally to § 15-3-530, without distinguishing among subsections. *See*, *e.g.*, *City of Newberry v. Newberry Elec. Coop., Inc.*, 692 S.E.2d 510, (S.C. 2010) ("We have repeatedly held that *a statute of limitations* begins to run when the party either knew or should have known that some legal right had been invaded.") (citations omitted) (emphasis added). The Court therefore concludes that the discovery rule applies to Plaintiffs' claims under the

---

[3] The Court further notes that the courts in *Slusser* and *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671 (Tenn. 2019), applied a different standard for determining whether the statute of limitations had run on a breach of contract claim. See *BlueCross*, 566 S.W.3d at 711–12, for a discussion of the difference between the all-purpose "discovery rule" used in South Carolina and the "inherently undiscoverable" standard used in many other jurisdictions.

6

Sales Representatives Act and that Defendants' arguments fail for the reasons explained above.[4]

***Fraud Claims***

Next, Defendants argue that Plaintiffs' claims for fraud, negligent misrepresentation, and breach of contract accompanied by fraudulent act must be dismissed because they fail to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

Plaintiffs do not dispute that Rule 9(b) applies to the three claims at issue. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Only "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. In practice this means that a plaintiff alleging fraud must plead "the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)). The pleading standard of Rule 9(b) requires a party to "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 705 (4th Cir. 2018) (quoting *Wilson*, 525 F.3d at 379) (internal quotation marks

---

[4] To the extent Defendants assert that claims under the South Carolina Payment of Wages Act ("SCPWA") are not subject to the discovery rule, the Court disagrees and finds that the discovery rule applies for the reasons enumerated above. *See Weaver v. John Lucas Tree Expert Co.*, C/A No. 2:13-cv-01698-PMD, 2014 WL 12849772, at *4 (D.S.C. Nov. 13, 2014) (applying discovery rule to the statute of limitation on plaintiff's SCPWA claims).

7

omitted); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990) ("[T]he circumstances to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'")). A party's "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Id*. at 783 n.5 (citing *United States ex rel. Thompson v. Columbia/ HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997)).

The point of contention appears to be whether Plaintiffs have sufficiently alleged a false "representation" or a "fraudulent act" by Defendants. *See Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 298 n.2 (S.C. 1996) (elements of a negligent misrepresentation claim); *Minter v. GOCT, Inc.*, 473 S.E.2d 67, 70 (S.C. 1996) (elements of a claim for breach of contract accompanied by fraudulent act); *First State Sav. & Loan v. Phelps*, 385 S.E.2d 821, 824 (S.C. 1989) (elements of a fraud claim). Plaintiffs have alleged the following:

> 31. Johnson and/or Alda engaged in numerous fraudulent acts by knowingly and illegally withholding commissions due to Eve and/or Eve, Inc. . . . . Each and every time Johnson and/or Alda sent a commission check, he/it committed a fraudulent act, because as Plaintiffs discovered in 2018, Johnson and/or Alda were supposed to pay her very specific amounts that were far above the amounts Johnson and/or Alda paid Plaintiff.

> 34. Johnson and/or Alda affirmatively misrepresented in the form of oral statements as well as the checks themselves (checks signed by Johnson representing commissions paid to her) to Eve and/or Eve, Inc. that all monies payable to Eve and/or Eve, Inc. were paid appropriately, paid in full, and paid timely with each check that was issued to her for commissions over the years 2004–[2011].

ECF No. 12 at ¶¶ 31, 34.

Viewing the facts in the light most favorable to Plaintiffs, the circumstances of the alleged fraud have been adequately described.  Each time Defendants sent Plaintiffs a commission check, they represented both by "oral statements" and by their conduct that the check constituted the full and proper amount of Plaintiffs' earned commission.  In so doing, Defendants reaped an obvious pecuniary gain.  Plaintiffs have adequately alleged such false representation not only by Defendants' verbal statements but by their conduct.  A "misrepresentation" may consist of "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth."  Restatement 2d of Torts, § 525, comment (b) (giving the example of a used car dealer who turns back the odometer on a car before a sale).  In this case, the parties agreed that Defendants would pay Plaintiffs all commission to which they were entitled.  By sending Plaintiffs a commission check, Defendants represented that the check comprised the full amount of Plaintiffs' commission.  These facts are distinguishable from *Williams v. United States*, cited by Defendants, in which the Court held that a check itself "is not a factual assertion" and makes no "representation as to the state of [the signer's] bank balance."  458 U.S. 279, 284–85 (1982).  Here it was not the checks themselves but Defendants' action of sending deficient commission checks, pursuant to an agreement that full commission would be paid, that constituted the misrepresentation.

Defendants also argue that Plaintiffs' claim for breach of contract accompanied by a fraudulent act fails because they have not alleged an "independent" fraudulent act beyond the breach of contract.  ECF No. 16-1 at 19.  It is certainly true as a matter of South Carolina law that the breach must be "accompanied by a fraudulent act."  *Minter*,

473 S.E.2d at 70.  The Court cannot agree, however, that "the only purportedly 'fraudulent' act alleged by Plaintiffs is the alleged breach of the contract itself."  ECF No. 16-1 at 19.  Defendants not only failed to pay Plaintiffs the full commission to which they were entitled (the breach), but also misrepresented to Plaintiffs that the full amount was being paid (the fraudulent act).

Because Plaintiffs' fraud claims are pled with the requisite particularity and establish their respective elements, the Motion is denied with respect to the third, fourth, and fifth causes of action.

### *Sales Representatives Act*

Plaintiffs bring their second cause of action pursuant to S.C. Code Ann. § 35-65-10 *et seq.*, Payment of Post-Termination Claims to Sales Representatives ("Sales Representatives Act").  The Sales Representatives Act provides in relevant part:

> When a contract between a sales representative and a principal is terminated for any reason, the principal shall pay the sales representative all commissions that have or will accrue under the contract to the sales representative according to the terms of the contract.

S.C. Code Ann. § 39-65-20.

The issue raised by Defendants' Motion is whether either Defendant was a "principal" for purposes of the Act.  Section 39-65-10 of the Sales Representatives Act defines a "principal" as "a person who":

(a) manufactures, produces, imports, or distributes a tangible product for wholesale;

(b) contracts with a sales representative to solicit orders for the product; and

(c) compensates the sales representative, in whole or in part, by commission.

10

S.C. Code Ann. § 39-65-10(3).  Defendants argue they cannot be principals because "[n]owhere in the Complaint do Plaintiffs allege that Alda or Johnson manufacture shoes, produce shoes, import shoes, or distribute shoes."  ECF No. 16-1 at 20.

Plaintiffs declined to address this assertion in their Response.[5]  *See generally* ECF No. 17.  Although their failure may be said to constitute a concession, *see Nell v. Sabadell United Bank, N.A.*, C/A No. 0:17-cv-435-JFA-SVH, 2017 WL 11272397, at *3 (D.S.C. Aug. 28, 2017), *adopted by* 2017 WL 11272398 (D.S.C. Oct. 24, 2017),  the Court will consider the issue on its merits.

Plaintiffs allege that Defendants contracted with Plaintiffs "as principal."  ECF No. 12 at ¶ 25.  However, the Court is required only to accept the truth of facts alleged and not of legal conclusions.  *See E. Shore Mkts.*, 213 F.3d at 180.  The relevant facts are as follows:

> Johnson/Alda and Eve/Eve, Inc. worked exclusively for Italian Shoemakers' business interests, selling only its shoes.  Johnson was Eve's boss and [] hired her services and ultimately employed her directly by paying her additional salary.

ECF No. 12 at ¶ 7.  There is no allegation that Defendants manufactured, produced, or imported shoes.  The question, therefore, is whether the allegation that Defendants "worked . . . selling [Italian Shoemakers'] shoes" is equivalent to an allegation that they "distributed" shoes for wholesale within the meaning of the Act.

---

[5] Plaintiffs' lack of response to several of Defendants' arguments appears to arise from their failure to note the differences between Defendants' first Motion to Dismiss (ECF No. 7) and the instant Motion to Dismiss, filed subsequent to the Amended Complaint. The Court notes that Plaintiffs had adequate notice and opportunity to respond to the second Motion and, in fact, filed a second and separate Response.

11

The Court finds that it is not. Defendants may, in reality, have distributed shoes for wholesale, but that fact is insufficiently alleged in the Amended Complaint. Plaintiffs include few details about the relationship between Defendants and Italian Shoemakers or the nature of Defendants' sales activities. The only facts alleged about Defendants' role are that (1) Defendants sold shoes manufactured by Italian Shoemakers, and (2) Defendants hired Plaintiff Thornton to negotiate sales of Italian Shoemakers' shoes with various retail stores. It is not known, for example, whether Defendants bought shoes from Italian Shoemakers and then resold them to retailers. *See Zauderer Assocs. v. C&J Indus.*, C/A No. 2:03-1864-PMD, 378 F. Supp. 2d 682, 688 (D.S.C. 2005) ("[A] 'wholesaler' is 'one who buys large quantities of goods and resells them in smaller quantities to retailers or other merchants, who in turn sell to the ultimate consumer.'") (quoting Black's Law Dictionary (8th ed. 2004)). Furthermore, Plaintiffs have neither contradicted Defendants' assertion that they were not principals nor provided the Court with argument or authority to support a contrary finding. Accordingly, the Court grants Defendants' Motion as to Plaintiffs' Sales Representatives Act claim.

***Unfair Trade Practices Act***

For a sixth cause of action, Plaintiffs allege a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code. Ann. § 39-5-10 *et seq*. "In order to bring an action under the UTPA, the plaintiff must demonstrate (1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998) (citing S.C. Code

Ann. § 39-5-140; *Daisy Outdoor Advertising Co., Inc. v. Abbott*, 473 S.E.2d 47, 49 (S.C. 1996)).

Defendants contend that Plaintiffs have failed to state a claim with respect to the SCUTPA because (1) the SCUTPA does not apply to disputes between an employer and an employee, (2) there is no allegation of an unfair trade practice, and (3) Plaintiffs have demonstrated no adverse effect on the public interest. ECF No. 16-1 at 21–23. Plaintiffs responded to these arguments only in part. In particular, they did not respond to Defendants' argument that Plaintiffs cannot bring a SCUTPA claim because they were employees of Defendants.

The Court finds Defendants' argument that employees cannot bring SCUTPA claims against their employers convincing. "South Carolina courts have clearly and consistently held that the SCUTPA does not apply to acts arising out of the employer-employee relationship." *Johnson v. Greenville Safety Consultants, Inc.*, C/A No. 6:17-cv-02334-AMQ, 2018 WL 2462001, at *3 (D.S.C. June 1, 2018) (citing *Davenport v. Island Ford, Lincoln, Mercury*, 465 S.E.2d 737, 740 (S.C. Ct. App. 1995)). The South Carolina Court of Appeals held in *Davenport* that the "UTPA does not apply to acts that take place in an employer-employee relationship" and explained that "the employer-employee relationship does not fall within the intended scope of the UTPA because employment practices fall within the purview of other statutes adopted for that express purpose." 465 S.E.2d at 740.

Moreover, and separately, Plaintiffs have not sufficiently established an adverse impact on the public interest. They allege the public was impacted because (1) Plaintiffs were deprived of funds that would otherwise have entered the stream of commerce and

13

benefited the economy, and (2) the unpaid commissions were taxable in North Carolina instead of South Carolina as a result of Defendants' conduct.  ECF No. 12 at ¶ 50.  The Court is unconvinced that these allegations meet the requirements of the SCUTPA.  The very purpose and effect of the public interest requirement is to exclude "unfair or deceptive act[s] or practice[s] that affect[] only the parties to a trade or a commercial transaction." *Noack Enterprises, Inc. v. Country Corner Interiors, Inc.*, 351 S.E.2d 347, 349 (S.C. 1986).  By Plaintiffs' logic, an adverse public impact could be fashioned out of virtually every unfair or deceptive private transaction.  While the Supreme Court of South Carolina has specified that the required public impact may be shown by the "potential for repetition" alone, this requires something more than a general allegation that the conduct "could" be repeated.  *Daisy Outdoor Advertising Co. v. Abbott*, 473 S.E.2d 47, 51–52 (S.C. 1996); ECF No. 12 at ¶ 49.  Plaintiff's SCUTPA claim therefore fails in this respect as well and Defendants' Motion is granted as to the sixth cause of action.

### *Payment of Wages Act*

Plaintiffs' seventh and final cause of action is brought pursuant to the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. § 41-10-10 *et seq.*, which requires employers to pay their employees "all wages due," *id*. § 41-10-40(A).

Defendants first move the Court for dismissal on the basis that Plaintiffs may not proceed under both the Sales Representatives Act and the SCPWA.  *See* S.C. Code. Ann. § 39-65-80 ("Any person bringing an action under the provisions of this chapter may not bring an action under the provisions of Section 41-10-10.").  Because the Court dismissed Plaintiffs' Sales Representatives Act claim as set forth above, this basis for dismissal is concededly moot.  *See* ECF No. 18 at 2 ("[T]o the extent the Court declines

14

to grant Defendants' Motion to Dismiss as to Plaintiffs' Sales Representatives Act claim . . . Plaintiffs' SCPWA claim must be dismissed.").

Second, Defendants argue that Plaintiff Eve, Inc., cannot maintain a claim under the SCPWA because it is a corporation and cannot therefore be an "employee." ECF No. 16-1 at 24. The single supporting case cited by Defendants involves a North Carolina statute that defines "employee" as "any *individual* employed by an employer." *Stellar Ins. Group, Inc. v. Cent. Cos., LLC*, 2006 WL 2862218, at *9 (W.D.N.C. Sept. 12, 2006) (emphasis added). That court's holding relied explicitly on the language of the statute. *Id*. ("The undersigned fully agrees, *as the statute provides* that an employee is 'any individual employed by an employer.'") (emphasis added). Defendants point to no similar language in the relevant South Carolina statute and this Court is aware of none. While the SCPWA does not define the term "employee," it defines an "employer" as "every person . . . employing any person in this State." S.C. Code Ann. § 41-10-10(1). The terms "person" and "individual" are not generally interchangeable within South Carolina's statutory scheme, nor does the term "person" generally exclude corporate entities. *See*, *e.g.*, S.C. Code. Ann. § 39-65-10(2) (defining "person" as "an individual, corporation, partnership, association, estate, or trust."). Therefore, even in the absence of responsive argument by Plaintiffs, Defendants' Motion is denied as to this claim.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [16] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' second and sixth causes of action, brought pursuant to the Sales Representatives Act and the South Carolina Payment of Wages Act, are hereby **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

**s/ Donald C. Coggins, Jr.**
United States District Judge

December 7, 2020
Spartanburg, South Carolina